UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TODD SMITH,<br><br>    Plaintiff,<br><br> v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK,<br><br>    Defendant. | Civil Action No. 22-cv-322 |

**MEMORANDUM OPINION**

  Plaintiff Todd Smith was diagnosed with late-stage colon cancer in November 2020, while employed as a manager at Defendant Amtrak. Amtrak initially permitted Plaintiff to work remotely during the COVID pandemic as an immunocompromised cancer patient undergoing treatment. But Amtrak rescinded that permission after nearly three months, instead requiring Plaintiff to take unpaid leave during his chemotherapy. Because he had not received medical clearance to return to on-site work when his leave ended, Amtrak fired him.

  Amtrak moves for summary judgment on all counts of Plaintiff's Amended Complaint. Def.'s Mot. for Summ. J. at 1–18, ECF No. 23-2 ("Def.'s Mot."). For the reasons below, the court will DENY Amtrak's motion.

**I.  BACKGROUND**

  The following facts are undisputed by the parties. Amtrak hired Plaintiff as a manager in a work equipment shop in Wilmington, Delaware, on November 28, 2016. Def.'s Stmt. of Undisputed Material Facts ¶ 1, ECF No. 23-1 ("Def.'s SUF"); Pl.'s Stmt. of Gen. Issues of Material Fact ¶ 1, ECF No. 24-1 ("Pl.'s SUF"). Four years later, in November 2020, Plaintiff was

diagnosed with late-stage colon cancer. Def.'s SUF ¶ 4; Pl's SUF ¶ 2. He began receiving radiation and chemotherapy that left him immunocompromised at the height of the COVID-19 pandemic. Pl.'s SUF ¶ 2; *see* Def.'s SUF ¶ 5.

When he received his diagnosis, Plaintiff spoke with his supervisor, Senior Manager of Work Equipment, James Miller, who permitted Plaintiff to work from home temporarily. Def.'s SUF ¶ 5; Pl.'s SUF ¶ 3. Miller did so to accommodate Plaintiff's medical treatment and avoid exposing him to COVID-19. Def.'s SUF ¶ 5; Pl.'s SUF ¶ 3. Plaintiff worked remotely from November 2020 to January 2021. Def.'s Ex. E at 21:4-11, ECF No. 23-7; Pl.'s SUF ¶ 3. During those nearly three months, another manager, Steve McGill, assisted with any on-site tasks, such as critical lifts or injuries, that Plaintiff could not perform remotely. Def.'s SUF ¶ 6; Pl.'s SUF ¶ 4.

Amtrak revoked Plaintiff's remote work arrangement in January 2021, claiming that McGill would be working in the field and could no longer take care of Plaintiff's on-site tasks. Def.'s SUF ¶¶ 9–10; Pl.'s SUF ¶ 5. On January 21, 2021, Plaintiff requested unpaid medical leave to complete his treatment. Def.'s SUF ¶ 11; Pl.'s SUF ¶ 6. Attached to his request was a doctor's certification stating that Plaintiff (1) was undergoing chemotherapy treatment, (2) would be having surgery in the future, and (3) was estimated to need continuous time off from November 2, 2020, through July 15, 2021. Def.'s Ex. 7 at 1–4, ECF No. 23-3 ("Def.'s Ex. 7"). On February 19, Amtrak responded to Plaintiff's request by letter, informing him that: 1) Plaintiff had exhausted his leave under the Family and Medical Leave Act on January 24, 2) Amtrak would only extend his leave if it did not pose "an undue hardship to the company" but would "immediately" post his position in the meantime "[d]ue to both the critical safety oversight and management" his job required. Def.'s Ex. 8 at 1, ECF No. 23-3.

In the same letter, Amtrak provided Plaintiff three options, all of which required a medical clearance for Plaintiff to return to work: (1) If Plaintiff received medical clearance before Amtrak extended an offer to his replacement and could perform the essential functions of his job, it would rehire him; (2) If Plaintiff received clearance but could not perform the essential functions of his position, then Amtrak would "consider" him for "reassignment to open positions for which" he was "qualified"; (3) If he was not cleared by the time of Amtrak's offer to his replacement, Amtrak would fire him. *Id.*

Months later, on April 7, Amtrak sent Plaintiff a letter giving him until April 22 to submit a medical clearance and keep his job. The letter stated:

> Due to both the critical safety oversight and management of M/W equipment maintenance and repair activities provided by your position, after April 22, 2021 we will not be able to hold your position open through your expected return to work date. . . To that end, we will allow you to remain on leave, but your position will be posted on April 22, 2021. If you are cleared by Amtrak's Medical Director to return to work before we extend an offer to a candidate for the Manager Work Equipment Shop position, you will have the opportunity to return to your position at that time[.]

Def.'s SUF ¶ 13.

On April 30, Plaintiff informed Amtrak that he anticipated returning to work on June 1, without a medical clearance. Def.'s SUF ¶ 15; Pl.'s SUF ¶ 8. On May 25, before Plaintiff could so return, Amtrak awarded his job to someone else. Def.'s SUF ¶ 16; Pl.'s SUF ¶ 9.

On June 1, Plaintiff filed a complaint with Amtrak alleging disability discrimination. Def.'s SUF ¶ 18; Pl.'s SUF ¶ 10. Two days later, on June 3, Amtrak internally designated him as "ineligible for rehire," meaning that Plaintiff could not be hired for future Amtrak jobs. Pl.'s SUF ¶ 46; Pl.'s Ex. 12 at 1, ECF No. 25-12. It then fired him. Def.'s SUF ¶ 19; Pl.'s SUF ¶ 11. Plaintiff completed his last cancer treatment in June 2021. Def.'s SUF ¶ 20; Pl.'s SUF ¶ 12.

On February 7, 2022, Plaintiff sued in this court under the Americans with Disabilities Act ("ADA"). Compl. ¶¶ 35–49, ECF No. 1. ("Compl.").

## II.  LEGAL STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the court must draw all reasonable inferences in the non-moving party's favor, the non-moving party "may not rest upon [the] mere allegations or denials of his pleading but must present affirmative evidence showing a genuine issue for trial." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (internal quotation marks and citation omitted).

## III.  ANALYSIS

### A. Disability Discrimination (Count I)

"The ADA prohibits discrimination against an employee "on the basis of disability[.]" 42 U.S.C. § 12112(a). "[T]he two basic elements of a disability discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's disability." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008). A "discrimination or retaliation claim brought under the ADA can rest on a 'motivating factor' causation analysis—meaning that the claim can be sustained if discriminatory animus is merely one of several factors that precipitated the adverse employment action." *Drasek v. Burwell*, 121 F. Supp. 3d 143, 154 (D.D.C. 2015); *but see Haughton v. District of Columbia*, 819 F. App'x 1, 2 (D.C. Cir. 2020) ("Whether the ADA incorporates by cross-reference to Title VII the latter's motivating-factor standard remains an open question in this circuit.").

If a plaintiff makes out a *prima facie* case of disability discrimination, the burden then shifts to the defendant to "articulate some 'legitimate, nondiscriminatory reason' for the action challenged." *Walden v. Patient-Centered Outcomes Rsch. Inst.*, 304 F. Supp. 3d 123, 133 (D.D.C.

2018*)* (quoting *Giles v. Transit Employees Fed. Credit Union*, 794 F.3d 1, 6 (D.C. Cir. 2015)). When an employer makes such a showing, "the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original). Instead, "the question on summary judgment becomes whether, based on the totality of the parties' evidence, a reasonable jury could determine that the defendant's proffered explanation was pretext for discrimination." *Conn v. Am. Nat'l Red Cross*, 149 F. Supp. 3d 136, 143 (D.D.C. 2016) (citing *Brady*, 520 F.3d at 494–95).

Defendant first argues that Amtrak's June 3 termination letter, reiterating that a medical clearance was required for him to return to work, is not direct evidence of disability discrimination. Def.'s Mot. at 9.

In Amtrak's letter, James Miller wrote:

"The [April 7] letter advised that if a[] [replacement] offer was made prior to you being medically cleared to return to work, you would be separated from employment with Amtrak. We have selected a suitable candidate to fill this position and, as of this date, you have not been medically cleared to return to work. Therefore, effective 6/03/2021[], your employment with Amtrak is terminated."

Pl.'s Ex. 11 at 1, ECF No. 25-11 ("Pl.'s Ex. 11"). Plaintiff asserts that "Amtrak's avowed rational[e] for its actions [] rested, at least in part, on [his] disability." Pl.'s Opp'n at 10, ECF No. 24 ("Pl.'s Opp'n"). The court agrees.

Direct evidence of discrimination can exist if "the actions of a discriminatory supervisor []feed into and causally influence the decisionmaker's ultimate determination." *Steele v. Mattis*, 899 F.3d 943, 950 (D.C. Cir. 2018). For example, if a supervisor's actions reflect an "open hostility" to an employee based on "stereotypes and prejudices" about their protected trait, then that is sufficient. *Id.* at 951. If the evidence "does not establish bias without the need for additional

inference," however, then it is not direct, but circumstantial evidence. *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1375 (D.C. Cir. 2020).

Here, the letter shows, at a minimum, that Amtrak was not "supportive of" Plaintiff's "medical leave" or his possible "transition back to work on a part-time basis." *Baskerville v. CBS News Inc.*, 18-cv-2522, 2022 WL 612608, at *7 (D.D.C. Mar. 2, 2022). As Plaintiff notes, other courts have held that conditioning termination on a medical clearance can be direct evidence of disability discrimination. Pl.'s Opp'n at 11 n.1.[1]

Amtrak contends that it fired Plaintiff due to "safety" and "equipment maintenance requirements." Def.'s Reply in Further Support of its Mot. for Summ. J. at 15, ECF No. 26 ("Def.'s Reply"). That reasoning was referenced in Plaintiff's termination letter. Miller (who initially allowed Plaintiff to work remotely during his treatment) wrote: "By letter dated April 7, 2021, you were advised that your position of Manager Work Equipment Shop was to be posted on April 22, 2021 due to the critical business needs of the organization." Pl.'s Ex. 11 at 1. Amtrak thus argues that Plaintiff's sole focus on the letter's medical clearance language is misguided. Def.'s Reply at 15.

Affording all reasonable inferences to Plaintiff, however, the court need only conclude that his disability was a motivating factor in Amtrak's decision to fire him. *Drasek*, 121 F. Supp. 3d at 154 (explaining that the ADA requires a motivating factor causation standard). There is sufficient evidence here to support that conclusion. Amtrak clearly stated in its letter that because

---

[1] *See, e.g.*, *White v. Nucor Corp.*, 148 F. Supp. 3d 1316, 1324 (D. Utah 2015) (holding that a "termination letter that stated [the plaintiff] was being terminated because his doctor had not released him to perform the lifting requirements of the welder position" was direct evidence of discrimination); *Lovell v. Champion Car Wash, LLC*, 969 F. Supp. 2d 945, 949 (M.D. Tenn. 2013) (holding that a termination letter stating "[s]ince you cannot perform your job duties as needed, I am going to have to release you, for medical reasons, from employment" constituted direct evidence of discrimination).

Plaintiff "ha[d] not been medically cleared to return to work" by June 3, it "therefore" "terminated" him. Pl.'s Ex. 11 at 1. And Plaintiff's medical clearance was not in his control, but that of his physician, who determined when Plaintiff's chemotherapy no longer impeded his ability to work in person.

Although the D.C. Circuit has not yet addressed this precise scenario, the Second Circuit has held that when an employer explicitly states that it is firing an employee for being on medical leave, that is direct evidence of disability discrimination. In *Porter v. Dartmouth-Hitchcock Medical Center*, 92 F.4th 129, 150 (2d Cir. 2024), the employer, when asked during a staff meeting why the plaintiff "was being terminated rather than retained," responded that the plaintiff was "on disability." *Id.* The Second Circuit held that such a response was "direct evidence" that the employer fired plaintiff "in whole or in part" because of her disability. *Id.*

To Amtrak's point, its termination letter gave another reason for terminating Plaintiff—its "critical business needs" requiring his return to work by a specific date. Pl.'s Ex. 11 at 1; Def.'s Reply at 15. But as the Second Circuit stated, when an employer reveals that its termination decision rests in any way on a disability, that "virtually precludes a ruling as a matter of law that disability has played no role." *Porter*, 92 F. 4th at 151; *Alston v. District of Columbia*, 770 F. Supp. 2d 289, 293 (D.D.C. 2011) (distinguishing between a sole and a motivating factor for disability discrimination).

Accordingly, the court will deny Amtrak summary judgment on Plaintiff's disability discrimination claim.

## B. Retaliation (Count III)

Under the ADA, a retaliation claim requires that: (1) plaintiff "engaged in protected activity"; (2) plaintiff "was subjected to adverse action by the employer"; and (3) "there existed a causal link between the adverse action and the protected activity." *Smith v. District of Columbia*,

430 F.3d 450, 455 (D.C. Cir. 2005) (internal quotation marks and citation omitted). Assuming Plaintiff has made a *prima facie* case for retaliation, he is again subject to the *McDonnell Douglas* burden shifting framework that the court described in Section III.A—meaning the burden then shifts to Amtrak to articulate some legitimate, nondiscriminatory reason for the action challenged. 411 U.S. 792, 802–03 (1973). If Amtrak does so, Plaintiff must then point to evidence to show that Amtrak's proffered explanation was nonetheless a pretext for discrimination. *Id.* at 804.

Plaintiff contends that Amtrak retaliated against him after he filed his disability complaint by not trying to reassign him, failing to rehire him, declaring him ineligible for rehire, and then firing him.[2] Pl.'s Opp'n at 22–24. In response, Amtrak first argues that Plaintiff failed to raise a *prima facie* case because Amtrak contemplated hiring Plaintiff's replacement *before* he filed his disability complaint. *See* Def.'s Mot. at 16–18.

The court need not address whether Plaintiff has raised a *prima facie* case. Indeed, "asking whether" Plaintiff "satisfied his prima facie burden is an unnecessary and improper 'sideshow'" "at this stage of litigation." *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (citation omitted). Once the employer asserts a legitimate, nondiscriminatory reason for its actions, it "has done everything that would be required . . . if the plaintiff had properly made out a *prima facie*

---

[2] Amtrak contends that Plaintiff cannot recast his retaliation claim in his Opposition, as his Complaint limited the retaliation to just his termination. Def.'s Reply at 17. But Amtrak relies on an inapposite case in which a party failed to raise an entire claim in their complaint, rather than explaining the basis for their claim during litigation, as Plaintiff does here. *See Kilpatrick v. Paige*, 193 F. Supp. 2d 145, 158 (D.D.C. 2002). Amtrak is correct, however, that the Complaint does allege Plaintiff's termination as the sole basis for retaliation. Compl. ¶ 47. This court can, however, *sua sponte* permit a party leave to amend when it attempts to later supplement an allegation with evidence that arose out of the transaction or occurrence. *Abraha v. Colonial Parking, Inc.*, 311 F. Supp. 3d 37, 39 (D.D.C. 2018) (permitting leave to amend when a plaintiff attempted "to expand the claims that they [were] asserting"). It will therefore allow Plaintiff to amend his Complaint to include the extra bases for his retaliation claim and provide Amtrak "an opportunity to raise any prejudice that would result therefrom." *Id.* at 41.

case," so "whether the plaintiff really did so is no longer relevant." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983).

Amtrak next argues that it "terminated [Plaintiff] for the legitimate reason that he was unable to work in person, on-site for an extended period of time, and Amtrak needed his position filled for safety reasons." Def.'s Mot. at 18.

Plaintiff, however, satisfies his burden of raising a pretextual, retaliatory inference. First, he points out that before he filed his disability complaint on June 1, Amtrak had inquired about interviewing him for other positions within the company. In fact, Plaintiff's disability complaint states, and Amtrak does not dispute, that James Miller called him on June 1, "saying that he wanted to interview" Plaintiff "for some filing positions." Pl.'s Ex. 17 at 3, ECF No. 25-17 ("Pl.'s Ex. 17"); Def.'s Resp. to Pl.'s Stmt. of Genuine Issues ¶ 41, ECF No. 26-3 ("Def.'s SUF Resp.") (not disputing that the call took place). Miller's call contradicts Amtrak's February 19 letter, which stated that Plaintiff would *only* be considered for other positions within Amtrak *if* he submitted a medical clearance and could not perform the essential functions of his position. Def.'s Ex. 8 at 1, ECF No. 25-8 ("Def.'s Ex. 8"). Two days after Miller's call, and Plaintiff's disability complaint, Amtrak fired Plaintiff without ever interviewing him for another position, as Miller had mentioned. Def.'s SUF ¶ 19; Pl.'s SUF ¶ 11. Amtrak also designated Smith as "ineligible for rehire," meaning it would not offer him future employment for any position. Pl.'s Ex 13 at 56:22-57:19, ECF No. 25-13; Pl.'s Ex. 12 at 1, ECF No. 25-13 ("Pl.'s Ex. 12").

Amtrak contends that Plaintiff's retaliation argument solely rests on temporal proximity. Def.'s Mot at 16–18. But as is the case here, when "the two events are very close in time," a strong causation argument exists. *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012); Pl.'s Ex. 12 at 1; Def.'s SUF ¶ 19; Pl.'s SUF ¶ 11. Courts have found causation where the adverse action

is within three months of the protected activity. *See McIntyre v. Peters*, 460 F. Supp. 2d 125, 133 (D.D.C. 2006) (stating that "[t]his Court has often followed a three-month rule to establish causation on the basis of temporal proximity alone" when considering a summary judgment motion). Therefore, at the very least, a "close-in-time relationship between Plaintiff's protected activity and the adverse action[s]" is a factor in support of a pretextual retaliatory inference. *Crowley v. Perdue*, 318 F. Supp. 3d 277, 289 (D.D.C. 2018).

To be sure, "positive evidence beyond mere [temporal] proximity" is required to rebut an employer's legitimate, non-retaliatory explanations for an adverse employment action. *Waggel*, 957 F.3d at 1376 (quoting *Minter v. District of Columbia*, 809 F.3d 66, 71–72 (D.C. Cir. 2015). Plaintiff proffers the testimony of two Amtrak employees, who confirmed that the only reason that Amtrak offered Plaintiff's job to a replacement was because Plaintiff had not "been cleared to return to work." Pl.'s Ex. 13 at 28:14, ECF No. 25-13 ("Pl.'s Ex. 13"); Pl.'s Ex. 9 at 45:6–9, ECF No. 25-9 ("Unfortunately" Plaintiff "was not medically cleared to return to work within the designated time frame and, therefore, his employment" "was separated"). Moreover, although Angelo Schiavello could not recall who decided to designate Plaintiff as ineligible for future hire, she confirmed that the decision was discretionary. *See* Pl.'s Ex. 13 at 57:10–12 ("[W]hen a separation is done in the system," designating as ineligible for rehire someone is a separate "check box that's checked[.]"); *id.* at 57:13–15 (stating that she did not "recall" "who made the decision that Mr. Smith should be ineligible for rehire").

Because Plaintiff evinces a retaliatory pretext that a reasonable jury could find, the court will deny Defendant's motion for summary judgment on Count III.

### C. Failure to Accommodate (Count II)

"[T]o prevail on a claim for failure to accommodate, the plaintiff must demonstrate that (1) they are a qualified individual with a disability; (2) their employer had notice of their disability;

and (3) their employer denied [their] request for a reasonable accommodation." *Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 86 (D.D.C. 2021). In the D.C. Circuit, failure to accommodate claims are not subject to the burden-shifting framework. *See Barth v. Gelb,* 2 F.3d 1180, 1185–86 (D.C. Cir. 1993) (explaining that the *McDonnell Douglas* framework does not apply to reasonable accommodation claims because such claims are assessed under the "application of traditional burdens of proof").

    i.    **Qualified Individual**

Amtrak challenges whether Plaintiff satisfies the first legal element of a failure to accommodate claim. Def.'s Mot. at 12. A "qualified individual" is an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Amtrak argues that Plaintiff was not a qualified individual because his job as manager of a work equipment shop essentially required his physical presence. Because he was medically incapable of working on-site as of June 2021, and had additional surgeries in August 2021, he could not perform the essential functions of his job. Def.'s Mot. at 12.

But Plaintiff never conceded that he was medically incapable of working in person. On April 30, in response to Amtrak's April 7 letter, he stated that he anticipated returning to work in June. Def.'s SUF ¶ 15; Pl.'s SUF ¶ 8. Indeed, he testified that he and his doctor's "goal" was that he return to work by June 23, at the latest. Pl.'s Ex. 1 at 160:1–3, ECF No. 25-1 ("Pl.'s Ex. 1"). To ensure he was able to do so, Plaintiff cancelled his monthly chemo treatments for July. *Id.* at 161:3. And Plaintiff's surgeries in July and August 2021 were not related to his cancer treatment. *Id.* at 53:10 (testifying that he was treated after June 2021 for "two abdominal blockages"). Because conceivably Plaintiff could have worked in July and August 2021, remote or otherwise,

he was therefore a qualified individual. *Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994) (If a disabled employee "can perform [her essential] functions without reasonable accommodation, so much the better–she is, of course, still qualified." (emphasis removed)).

### ii. Reasonable Accommodation

Amtrak also challenges whether Plaintiff's accommodation requests were reasonable, and if so, whether they would have caused undue hardship. Def.'s Mot. at 13. To "defeat a . . . motion for summary judgment," a plaintiff "need only show that an 'accommodation'" he requested "seems reasonable on its face, *i.e.*, ordinarily or in the run of cases," or that "special circumstances" rendered it reasonable. *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401, 405 (2002) (citation omitted). "Once the plaintiff has made this showing, the defendant/employer then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id.* at 402. "'Undue hardship' constitutes 'an action requiring significant difficulty or expense.'" *Leiterman v. Johnson*, 60 F. Supp. 3d 166, 180 (D.D.C. 2014) (quoting 42 U.S.C. § 12111(10)(A)). "The Supreme Court has held that an accommodation which causes anything 'more than a de minimis cost' to the employer's business constitutes an 'undue' hardship.'" *E.E.O.C. v. Rent-A-Ctr., Inc.*, 917 F. Supp. 2d 112, 117 (D.D.C. 2013) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977)).

#### a. Remote Arrangement

Amtrak argues that Plaintiff's accommodation request was unreasonable because allowing him to work remotely longer than the nearly three months it originally permitted would "eliminate the essential functions" of his job. Def.'s Mot. at 13. The court disagrees.

Miller permitted Plaintiff to work remotely for three months without apparent disruption. Def.'s Ex. E at 21:4-11; Pl.'s SUF ¶ 3. McGill covered Plaintiff's in-person duties during that

time. Def.'s SUF ¶ 6; Pl.'s SUF ¶ 4. Moreover, Plaintiff coordinated his schedule with Miller to ensure that he had coverage when he was unavailable. Pl.'s SUF ¶ 14; Def.'s SUF Resp. ¶ 14. Plaintiff's tasks mainly were administrative, and he could perform those responsibilities remotely. Pl.'s SUF ¶¶ 13–14; Def.'s SUF Resp. ¶ 13. Only when McGill was called back into the field did Amtrak find Plaintiff's remote arrangement no longer feasible. Def.'s SUF ¶¶ 9–10; Pl.'s SUF ¶ 5.

An employee's request for an indefinite remote work accommodation may be unreasonable or pose an undue hardship. But when an employer initially approves an accommodation request, and then revokes it without notification or sufficient explanation, that appears far less "reasonable as applied, *i.e.*, 'on the particular facts' of the case." *Taylor v. Rice*, 451 F.3d 898, 908 (D.C. Cir. 2006) (citation omitted).

Amtrak claims that it would have suffered undue hardship in extending Plaintiff's remote work arrangement, because it would have had to hire another employee to perform the functions of two jobs and incurred "lost efficiency, higher costs, or both." Def.'s Mot. at 15. But, as Miller testified, having one employee cover for another is not "all that big an inconvenience" for Amtrak. Pl.'s Ex. 3 at 35:13-19, ECF No. 25-3; Def.'s Mot. at 14. Thus, the court finds that there is sufficient evidence from which a juror could find that Plaintiff made a reasonable accommodation request, and that Amtrak would not have suffered undue hardship by permitting it.

    b. **Medical Leave of Absence**

After Amtrak revoked Plaintiff's remote work arrangement, on January 21, 2021, Plaintiff requested just under six months of medical leave to complete chemotherapy, to conclude on July 15, 2021. Pl.'s SUF ¶ 6; Def.'s SUF ¶ 11. Amtrak approved his request until April 22, and told

Plaintiff that he would be replaced if he did not return to work by that date. Def.'s Ex. 8 at 1; Def.'s SUF ¶ 13; Pl.'s SUF ¶ 7.

Amtrak argues that Plaintiff's July request was unreasonable because Plaintiff never provided any medical documentation to substantiate his anticipated return to work date. Def.'s Mot. at 14–16. But as of January 21, 2021, Amtrak was on notice that Plaintiff was undergoing cancer treatment at least until July 15. Def.'s SUF ¶ 11.

Moreover, Plaintiff tried to comply with Amtrak's April 22 deadline. He chose to accelerate his cancer treatment. Pl.'s SUF ¶¶ 24–28; Def.'s SUF Resp. ¶¶ 24–28. He even decided to forego his July cancer treatment, given Amtrak's April medical clearance deadline. Pl.'x Ex. 1 at 161:3. On April 30, 2021, Plaintiff notified Amtrak that he could return to work on June 1. Pl.'s SUF ¶¶ 8–9; Def.'s SUF Resp. ¶ 9.[3] Yet Amtrak offered Plaintiff's job to someone else on May 25, 2021, just days before he was prepared to return to work. Def.'s SUF ¶ 16; Pl.'s SUF ¶ 9.

Amtrak is correct that Plaintiff did not provide a medical clearance by April 22. But the ADA requires a "'flexible give-and-take' between employer and employee 'so that together they can determine what accommodation would enable the employee to continue working.'" *Ward v. McDonald*, 762 F.3d 24, 32 (D.C. Cir. 2014) (quoting *Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005)). In *Ward*, the D.C. Circuit made clear that the reasonableness of a medical clearance deadline turns on whether the employer "promptly respond[s]" to the request, meets with

---

[3] Although Plaintiff told Amtrak that he could return to work by June 1, 2021, he testified that his (as well as his doctor's) "goal" was to return by June 23. Pl.'s Ex. 1 at 160:1–3.

the employee "on several occasions to discuss the request," and seeks "more information from" the "physician to help them determine an appropriate accommodation." *Id.* at 34.

Amtrak did not engage in the "give-and-take" described in *Ward*. Amtrak does not contend that it requires a medical clearance from every employee seeking to return from medical leave. But even if it did, Amtrak's April 22 remote work accommodation for Plaintiff's medical condition was not the result of an iterative process with Plaintiff. Amtrak neither met with Plaintiff nor requested medical documentation from Plaintiff's physician *before* denying his July 15 request. Nor does the record show that Amtrak sought more information from Plaintiff's physician on April 30, when Plaintiff informed Amtrak that he would be available to return to work by June 1. Instead, Amtrak chose April 22 as its deadline for unexplained "critical safety oversight and management" reasons. Def.'s SUF ¶ 13.

Nothing in the ADA supports such a take-it-or-leave-it position. Plaintiff did not wait for Amtrak to request more medical information to substantiate his accommodation request. *Cf. Ward*, 762 F.3d at 34 (holding that if an employee fails to respond to the employer's request for more information, the employee is "author of her misfortune," and the employer cannot be held liable for failing to accommodate); *see also Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1307–09 (D.C. Cir. 2010) (affirming summary judgment for the employer on a failure to accommodate claim because plaintiff voluntarily quit after the employer requested that "she complete[] paperwork" documenting her disability). He voluntarily supplied it on January 21, 2021. Pl.'s

SUF ¶ 6; Def.'s SUF ¶ 11. It was then Amtrak's responsibility to utilize such information for further meetings with Plaintiff and his physician to formulate an appropriate accommodation.

Furthermore, for the reasons stated in *supra* Section III.C.b, the court also does not find that extending Plaintiff's medical leave until July 15 would have caused it undue hardship.

Accordingly, the court will deny Amtrak summary judgment on Plaintiff's failure-to-accommodate claim.

## IV.     CONCLUSION

For these reasons, Amtrak's Motion for Summary Judgment is DENIED. A corresponding order will follow shortly.

Date: September 23, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge